**NOT FOR PUBLICATION** [83]

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____
:
DONALD PETERSON,                                       :
                                                                            :     Civil Action No. 04-3310 (FLW)
           Plaintiff,                                          :
                                                                            :     **OPINION**
       v.                                                           :
                                                                            :
DR. GEORGE E. ACHEBE, *et al.*               :
                                                                            :
           Defendants.                                     :
_____:

**WOLFSON, District Judge**

   Presently before the Court is a motion for Summary Judgment pursuant to Fed.R.Civ.P. 56 by Defendants Achebe, Tagle, Talbot, Warner and Clark (collectively, the "Defendants"), who are current or former employees of Correctional Medical Services ("CMS"). CMS provides medical care to inmates at the New Jersey State Prison in Trenton, New Jersey, and Plaintiff Donald Peterson, who is currently incarcerated at the New Jersey State Prison, alleges, pursuant to 42 U.S.C. § 1983, that the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide appropriate medical care in connection with his complaints of chest pain and breathing problems. The Defendants argue that they are entitled to summary judgment on Plaintiff's claims as the record is inadequate to support his claim of deliberate indifference. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons that follow, I find that Plaintiff has failed to meet his burden to affirmatively identify genuine, material factual issues sufficient to defeat the Defendants' motion for summary judgment.

Accordingly, the Defendants' motion for summary judgment is granted and Plaintiff's claims against them are dismissed.

**I.     BACKGROUND**

Plaintiff is an inmate at the New Jersey State Prison currently serving a sentence of thirty years to life for murder. Defendants' Stmt. of Undisputed Facts at ¶ 1. Plaintiff, initially proceeding *pro se*[1], filed a Complaint on July 22, 2004, alleging that his requests for proper treatment while incarcerated have been ignored by Defendants and/or he has received improper treatment in violation of his constitutional rights. Plaintiff's Compl. in General; Plaintiff's Counterstatement of Undisputed Facts at ¶¶ 2-3.

In addition to the Defendants presently moving before this Court for summary judgment, Plaintiff additionally named former Governor James E. McGreevey, Roy L. Hendricks, former Administrator of the New Jersey State Prison, Thomas D. Farrell, former Supervisor of Health Services for the New Jersey Department of Corrections, and Devon Brown, Commissioner of the Department of Corrections (collectively, the "State Defendants") and five other defendants that have made no appearance in this action. In November 2004, the State Defendants moved to dismiss the Complaint. In December 2004, the motion was dismissed without prejudice and with leave to re-file in 90 days because the Court granted Plaintiff's application for the appointment of *pro bono* counsel. Thereafter, in March 2005, the State Defendants re-filed their motion to dismiss the complaint. By Order dated May 20, 2005, the Court dismissed Plaintiff's Complaint as to State Defendants Brown, McGreevey and Hendricks and denied the motion as to State

---

[1] On January 28, 2005, Joseph A. Gorman, Esq. was appointed by the Court to serve as *pro bono* counsel to Plaintiff in this action.

Defendant Farrell. In May 2006, following discovery, State Defendant Farrell sought summary judgment. In June 2006, counsel for Plaintiff advised the Court that based on the facts elicited in discovery and based upon relevant case law, Plaintiff would not oppose Defendant Farrell's motion for summary judgment. By Order dated August 7, 2006, this Court granted Defendant Farrell's motion for summary judgment.

As Plaintiff's counsel points out, the origin of Plaintiff's action against the Defendants is found in the following allegations in his Complaint:

> 'dysfunctional medical action . . . [. . .] failure to complete [ ]
> medical duty to insure the well being of the inmates health' [sic]
> (Compl. at 4); and plaintiff further alleges the '[one doctor's] report
> reads that he didn't want to operate because he was afraid that the
> bullet in me was too close to my spine and he might touch something
> inside me that might paralyze me for life (Compl. at 5b); and
> plaintiff additionally arguing that 'the only thing the so called Doctor
> has done was order the wrong operation (capitary) which did
> nothing but hurt and reduce my manhood' [sic] (Compl. at 4) . . . .

[Plaintiff's Opp. Br. at 2]. Plaintiff was shot forty years ago, and the bullet remains in his body. Peterson Dep. pp. 14-16; Gorman Cert., Ex. A. Plaintiff has complained of chest pain and breathing problems over the past five years, which Plaintiff attributes to the bullet fragment having moved. In short, Plaintiff asserts that the Defendants have deprived him of his Eighth Amendment right to be free from cruel and unusual punishment by exhibiting deliberate indifference to his serious medical needs. Plaintiff's Opp. Br. at 3.

In support of the instant motion for summary judgment, Defendants have provided the Court with extensive medical records, many of which detail numerous health issues and treatments, some of which are related to Plaintiff's complaints of chest pain and breathing

problems and some of which are related to other health problems, but which clearly evidence the fact that Plaintiff has received significant care during the time period that Plaintiff claims to have experienced chest pain and breathing problems attributable to the bullet fragment.  See generally, Defendants' Exhibits A through KK to Defendant's Motion for Summary Judgment; see also, Exhibit A to Defendant's Reply Brief.  In response to the instant motion, Plaintiff admits that he has received the care indicated in the medical records appended to Defendants' motion and, indeed, cites to those medical records "in general" as evidencing his complaints of chest pain over the past five years.  See Plaintiff's Counter Stmt. of Undisputed Facts at ¶ 6.  Citing to the allegations in his Complaint, his own deposition testimony, and the deposition testimony of Defendant Achebe, Plaintiff alleges that he has a "serious medical need", that his pain continues to grow worse and expand and that medical personnel admit that they do not know the source of his pain.  Id. at ¶¶ 7 - 9.

## II.     DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. (56)(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.  The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. Celotex, 477 U.S.

at 330.  Once the moving party satisfies this initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324.  In other words, the non-moving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999).  A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the non-moving party. Anderson, 477 U.S. at 248.  In evaluating the evidence, a court must "view the inferences to be drawn from the underlying facts in the light most favorable to the [non-moving] party." Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002)(citations omitted).

      B.     **Plaintiff's § 1983 Claims**

Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that the Defendants violated his Eighth Amendment guarantee of freedom from cruel and unusual punishment.  Section 1983 provides a private cause of action against any person who, acting under color of state law, deprives another of rights, privileges, or immunities secured by the Constitution or laws of the United States.  The statute, in and of itself, is not a source of substantive rights but provides "a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989).  To assert a § 1983 claim, a plaintiff must allege that the defendant, "acting under color of State law," deprived him of a right secured by the Constitution and laws of the United States. West v.

5

Atkins, 487 U.S. 42, 48 (1988); Natale v. Camden County Correctional Facility, 318 F.3d 575, 580-81 (3d Cir. 2003).[2]

It is well established that prisoners can assert Eighth Amendment claims pursuant to § 1983 alleging inadequate medical care. See Helling v. McKinney, 509 U.S. 25, 31 (1993)("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). However, "[f]ailure to provide medical care to a person in custody can rise to the level of a constitutional violation [of the Eighth Amendment] under § 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs." Groman v. Township of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995). The "deliberate indifference" standard is, essentially, a two-pronged test, requiring: (1) that the prisoner's medical needs be serious, and (2) that there be deliberate indifference on the part of defendants to those needs. See Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979); Monmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir.1987), cert. denied,486 U.S. 1006 (1988). The Third Circuit has determined a "serious medical need" is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Lanzaro, 834 F.2d at 347 (quoting Pace v. Fauver, 479 F.Supp. 456, 458 (D.N.J. 1979), aff'd 649 F.2d 860 (3d Cir. 1981)). The Third Circuit has also

---

[2] The Court notes that the Defendants, all current and former CMS employees, do not argue that they were not acting under color of state law when they provided medical care to Plaintiff. Indeed, for the purposes of a § 1983 claim, the Supreme Court has recognized that physicians under contract with the state to provide medical services to prisoners are "state actors." See West v. Atkins, 487 U.S. 42, 54 (1988).

established that when a delay in or denial of requested medical treatment causes an inmate to suffer a life long handicap or permanent loss, the medical need is serious. Id.

Misdiagnosis or mere disagreement with the form of treatment does not rise to the level of a constitutional violation. Estelle, 429 U.S. at 107. Moreover, medical malpractice does not become an Eighth Amendment violation merely because the victim is a prisoner. Id. at 106. A plaintiff can establish that an official was deliberately indifferent to his medical condition in a variety of ways, including where an official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it, (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993)).

Courts generally grant prison physicians significant latitude in determining the course of medical treatment as long as it is based on "sound professional judgment." Christy v. Robinson, 216 F.Supp. 2d 398, 413 (D.N.J. 2002) (citing Inmates of Allegheny Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)). Thus, a court will generally not find deliberate indifference where a plaintiff was provided with some form of medical care. See, e.g., Christy, 216 F.Supp. 2d at 417 (finding no deliberate indifference where defendants made a "consistent effort to provide the Plaintiff with medication and treatment to ease the pain and discomfort associated with his arthritis"); Clark v. Doe, No. 99-cv-5616, 2000 WL 1522855, *2 (E.D.Pa. 2000) ("[C]ourts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Nevertheless, liability is not precluded where care was not based on sound

medical judgment.  See Christy, 216 F.Supp at 413.  Indeed, the Third Circuit has found a constitutional violation where the treatment pursued was based on non-medical reasons.  See White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990)(deliberate indifference could be found on plaintiff's allegations that doctor used certain medication and treatments to intentionally inflict pain on prisoner).

With regard to the first prong of the deliberate indifference test, the Defendants contend that Plaintiff has failed to prove a "serious medical condition."  Defendants argue that while Plaintiff has repeatedly complained of pain in his side and fears that the bullet fragment has moved, he has failed to produce any medical testimony that would establish that the bullet fragment in its current position constitutes a serious medical condition.  Defendants' Br. at 3.  The Court disagrees with the narrow view taken by Defendants.  Plaintiff claims that he has indeed established a serious medical need as evidenced by his significant and recurrent pain and by the treatment provided and medication prescribed (see Plaintiff's Opp. Br. at 8-9).   Plaintiff does not contend that the existence of the bullet fragment in his body constitutes the serious medical condition, but rather, his complaints of pain and the treatment rendered by Defendants in connection with those complaints.  This Court finds that based upon Plaintiff's well-documented complaints of chest pain and the treatment he received in connection with his complaints, a reasonable factfinder could indeed infer an objectively serious medical condition.

Nevertheless, under the subjective component of the deliberate indifference test, the Plaintiff has failed to make the required showing that the Defendants acted with deliberate indifference to his serious medical needs.   It is Plaintiff's burden to "affirmatively identify

genuine, material factual issues sufficient to defeat" Defendants' motion for summary judgment. See Atkinson v. City of Phila., No. 99-1541, 2000 WL 793193, at *5 n.8 (E.D. Pa. June 20, 2000), aff'd 281 F.3d 218 (3d Cir. 2001); Morris v. Orman, No. 87-5149, 1989 WL 17549, at *8 (E.D.Pa. Mar. 1, 1989). Plaintiff has failed to do so here.

The medical records and deposition testimony proffered by Defendants in support of the instant motion establish that the decisions made in connection with Plaintiff's complaints were based on "sound medical judgments" concerning Plaintiff's treatment. Indeed, in response to Plaintiff's complaints of pain, the medical records evidence the following: on April 6, 2001, Dr. Achebe recommended following up with a pulmonary exam and recommended a CT scan of Plaintiff's chest (Defendants' Stmt. of Undisputed Facts at ¶ 13); on May 8, 2001, Plaintiff was admitted to the prison infirmary based on complaints of chest pain (Defendants' Stmt. of Undisputed Facts at ¶ 15); on May 9, 2001, Plaintiff was admitted to St. Francis Medical Center as a result of his complaints of chest pain (Defendants' Stmt. of Undisputed Facts at ¶ 16); on September 28, 2001, Dr. Tagle conducted a physical examination and prescribed medication in connection with Plaintiff's complaints of chronic left rib pain (Defendants' Stmt. of Undisputed Facts at ¶ 18); on March 7, 2002, cardiac, endocrine, pulmonary and physical examinations were ordered by Dr. Achebe in response to Plaintiff's complaint of chest pain (Defendants' Stmt. of Undisputed Facts at ¶ 19); on May 9, 2002, Dr. Hamid examined Plaintiff and ordered Naproxen for Plaintiff in connection with his complaints of chest pain (Defendants' Stmt. of Undisputed Facts at ¶ 20); on September 5, 2002, Dr. Tagle examined Plaintiff and ordered thoraco/abdominal/chest x-ray in response to Plaintiff's complaints of chest pain (Defendants'

Stmt. of Undisputed Facts at ¶ 21); on September 16, 2002, abdominal films were ordered by Dr. Hamid in response to Plaintiff's complaints of chest pain (Defendants' Stmt. of Undisputed Facts at ¶ 22); on December 23, 2002, Dr. Hamid examined Plaintiff in connection with complaints of chest pain and order Naprosyn (Defendants' Stmt. of Undisputed Facts at ¶ 24); on April 9, 2003, during an office visit wherein Plaintiff complained of abdominal pain in the left upper quadrant, Plaintiff was advised that the numerous tests, CT scans of his abdomen, and chest x-rays were all unremarkable except for the bullet fragment and degenerative joint disease (Defendants' Stmt. of Undisputed Facts at ¶ 28); on June 20, 2003, Plaintiff was seen for complaints of left sided chest pain and referral for renewal of pain medication was made (Defendants' Stmt. of Undisputed Facts at ¶ 29); on July 10, 2003, x-rays of the lower gastrointestinal tract were found to be abnormal with references to a foreign body in the lower quadrant but abdomen was otherwise normal (Defendants' Stmt. of Undisputed Facts at ¶ 30); On October 23, 2003, in response to Plaintiff's complaints of chronic pain, Dr. Talbot added medication, Motrin and Maalox, to Plaintiff's medication list (Defendants' Stmt. of Undisputed Facts at ¶ 31); on January 30, 2004, Plaintiff was seen by Dr. Talbot in connection with his complaints of left sided chest pain and shoulder pain (Defendants' Stmt. of Undisputed Facts at ¶ 33); on February 3, 2004, an EKG was performed and on February 19, 2004, the reading of the EKG was normal (Defendants' Stmt. of Undisputed Facts at ¶¶ 34-35); and on March 8, 2004, Dr. Talbot treated and examined Plaintiff in connection with complaints of left chest wall pain (Defendants' Stmt. of Undisputed Facts at ¶ 36).  In addition to the foregoing, there is the deposition testimony of Dr. Achebe, wherein he unequivocally states that CMS "did everything [with Plaintiff] that needed to be done" in

10

connection with Plaintiff's complaints, including referrals for X-rays, CAT scans, referrals to surgeons and a cardiologist.  Plaintiff's Ex. B, T88:3-8.

     Plaintiff does not refute the foregoing.  Instead, Plaintiff devotes the majority of his argument in opposition to the instant motion to establishing that he has a "serious medical need." While this Court agrees that Plaintiff has demonstrated a "serious medical need",  on this record I cannot find that Defendants have acted with deliberate indifference.  In support of the deliberate indifference prong, Plaintiff simply points to his deposition testimony that he continues to suffer and that Defendants have been unable to determine the cause of his pain and argues that Defendants have therefore failed to render competent care.  On these facts, Plaintiff contends that a reasonable jury could find that Defendant's acts and omissions were sufficiently harmful to evidence deliberate indifference to his needs.  This Court disagrees.  The Court notes that the voluminous medical records supplied by Defendants in support of the instant Motion for Summary Judgment evidence the fact that Plaintiff has received significant care in connection with his complaints.  It is undisputed that in connection with Plaintiff's complaints of pain, he was seen by Defendants on countless occasions, was referred for two surgical consults, was referred to a cardiologist, and was administered numerous diagnostic tests which revealed no abnormalities that could be attributed to Plaintiff's complaints.  Further, the diagnostic tests revealed that, contrary to Plaintiff's complaints to Defendants, the bullet fragment in Plaintiff's body had not moved.  Accordingly, I find that Plaintiff has failed to meet his burden to affirmatively identify genuine, material factual issues sufficient to defeat the Defendants' motion for summary judgment.

**III.    CONCLUSION**

For the forgoing reasons, the Defendants' motion for summary judgment on Plaintiff's claims against them is granted.  An appropriate Order shall follow.


                    /s/ Freda L. Wolfson
                  The Honorable Freda L. Wolfson
                  United States District Judge


Date: May 8, 2007